## Case No. 13,920.

### The THOMAS A. SCOTT.

[Cited in Cartwright v. The Othello. Case No. 2,483. Nowhere reported; opinion not now accessible.]

---

## Case No. 13,921.

### The THOMAS A. SCOTT.

[1 Brown, Adm. 503;[1] 7 Chi. Leg. News. 19.]

District Court, E. D. Michigan. Aug., 1874.

COLLISION—VESSEL AGROUND—NARROW CHANNELS—STOPPING—JUDGMENT OF MASTER.

1. A vessel can be *held* in fault for her conduct only to the extent of risk or danger of collision with another vessel, as indicated by the relative situation of such other vessel at the time she determines upon a particular course of action, making proper allowance for the probability of a change in the relative situation of such other vessel.

[Cited in The Cherokee, 15 Fed. 122.]

2. It is not improper, under any and all circumstances, for a steam vessel to enter the old channel of St. Clair Flats, and attempt to pass through, while another vessel is aground upon one of its banks. It depends upon the apparent situation and circumstances of the vessel aground.

3. A vessel aground in a narrow channel, but in a situation to admit of other vessels passing her in safety, should, on the approach of another vessel, cease her efforts to get off until such other vessel has passed.

4. Where a schooner aground upon St. Clair Flats, upon an even keel, with room for other vessels to pass, saw a large propeller approaching, and did not cease her efforts to get off, but

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

swung partly across the channel: *Held*. that the propeller was not in fault for coming down the channel with the intention of passing the schooner while aground.

5. Nor was she in fault for pushing on and attempting to pass the schooner on her starboard side, instead of stopping and backing.

6. Having been placed in sudden peril by the fault of the schooner, the master of the propeller could not be blamed when, in the exercise of his best judgment, he adopted a course which may have been erroneous.

Libel for damage done to schooner Fred. A. Morse. by a collision upon St. Clair Flats. The schooner Morse, of 592 tons burden, arrived off the entrance to the flats, in tow of the tug Brockway, at 7 a. m., and lay there about two hours. waiting for the propeller Vanderbilt, then aground on the flats, to get off. As the propeller floated. she passed up the channel; and the tow supposing her bound up. entered it. The Vanderbilt, however, after passing the range lights, winded around, and came down the channel, meeting the tow about the middle stake. The swell was so great, she forced the Morse aground, on the starboard side of the channel, about 100 feet above the middle, where she lay on an even keel till just before the collision. Several propellers were lying at the Club House above the flats, waiting for the Vanderbilt to get off. The Thomas A. Scott, among the rest, had lain there two days. Seeing the Vanderbilt released. they all started down. the Fisk and Gould ahead. These two, as well as the bark Erastus Corning (a large grain vessel), in tow of a tug, passed the Brockway and Morse on their port side. The Scott followed, and after passing the range lights, observing the bow of the schooner swing two points to the port, whistled twice; the Brockway responded, and the Scott starboarded, and attempted to pass the tow on its starboard side, grounded a little below the stern of the schooner, forced her off and across the channel. The current swung her stern into the schooner and damaged her.

H. B. Brown, for libellant.

The propeller was in fault—

(1) In entering the channel at all while the schooner was aground. It is admitted the master of the propeller saw the schooner aground. and the tug at work upon her. He was bound to know the tug would pull her off some time, and that in swinging off, her bow would obstruct the channel more or less. If the master insisted upon going down and encountering this contingency, he took upon himself the risk. and must answer for the consequences. The Milwaukee [Case No. 9,-626]; The Vicksburg [Id. 16,931]; The Helen R. Cooper [Id. 6,333]. The Geo. Law [Id. 5,-336]; The St. John [Id 12,224]; The Germania, 3 Marit. Law Cas. 269. In this connection, I refer to the rules of the supervising inspectors for the Western rivers, which forbid vessels entering narrow channels while others are passing through in an opposite di-

rection. Though not in terms applicable to St. Clair Flats, it is but an enunciation of a general rule as to navigation in narrow channels.

(2) In going at too great speed, and in not stopping and backing before the peril became imminent. Her actual rate through the water is of small consequence. She was bound to keep herself entirely under control. The Alleghany, 9 Wall. [76 U. S.] 522. Precautions to avoid a collision must be seasonably taken. The Vanderbilt, 6 Wall. [73 U. S.] 225; The Russia, 3 Marit. Law Cas. 290. A vessel has no right to thrust herself into danger, and then complain that the consequences were inevitable. Best evidence of the speed of the propeller is the fact that, although she drew nearly two feet more water than the Morse, she did not fetch up until she had passed the stern of the Morse (then hard aground) from 20 to 50 feet.

W. A. Moore, for claimant.

There was no fault on the part of the propeller, and the collision must have been the result of inevitable accident. The City of London, Swab. 300; The Marpesia, L. R. 4 P. C. 212; The Morning Light, 2 Wall. [69 U. S.] 550; The Grace Girdler, 7 Wall. [74 U. S.] 203. Burden of proof, where inevitable accident is charged, is upon the party seeking to hold the other in fault. The Bolina, 3 Notes Cas. 208; 1 Pars. Shipp. & Adm. 527.

LONGYEAR, District Judge. 1. In the absence of positive law applicable to the case, a vessel can be held in fault for her conduct only to the extent of risk or danger of collision with another vessel, as indicated by the relative situation of such other vessel at the time she determines upon the particular course of action in question, making all proper and reasonable allowance for the probabilities of a change of the relative situation of such other vessel. It was not contended, and if it had been, I should not be prepared to hold that, as applied to the particular locality here in question (the old channel on the St. Clair Flats), it is improper, and a fault under any and all circumstances, for a vessel, especially a steam vessel, to enter the channel, and attempt to pass through, while another vessel is aground upon one of the channel banks; and the above rule is enunciated as applicable to this case, on the assumption that it is not improper, under any and all circumstances; or, in other words, that it may be proper or improper, a fault or not a fault, according to the situation and circumstances of the vessel aground apparent at the time of entering the channel. What, then, was the apparent situation of the Morse when the Scott entered the channel? She was bound up, and was aground on the, to her, starboard channel bank, on an even keel, lying parallel with the channel, and leaving ample room for vessels of the largest size to pass her in

safety. This was not only apparent from observation, but it had been made certain to the Scott by the fact that three vessels, each one as large as herself, had just passed through. Thus far, therefore, there was no impropriety in entering the channel and making the attempt to pass through. But it was said the efforts to get the Morse off then in progress were also apparent; and it was claimed that a probability of the position of the Morse being changed before the Scott could pass her ought to have been also taken into consideration, and that such probability rendered it improper to enter the channel while those efforts were going on. To that proposition I cannot give my unqualified assent. I think it more reasonable and consonant with the interests of navigation to hold that a vessel aground in a narrow channel, but in a situation to admit of other vessels passing her in safety, should, on the approach of another vessel, cease her efforts to get off until the other vessel has passed. To require other vessels, under such circumstances, to await the result of such efforts, would be contrary to universal practice, would tend to a serious hindrance to navigation, and would often occasion serious detriment to vessel owners who are in no manner in fault for the obstruction to the channel. A vessel aground in a situation not admitting of other vessels passing her in safety, presents, of course, a very different case, and one to which the foregoing has no application. The Scott was, therefore, not in fault for entering the channel as she did, and the first charge of fault is not sustained.

2. That the Scott's speed was too great under the circumstances. I think there is a decided preponderance of proof that as soon as the Morse swung out into the channel, the speed of the Scott was checked down to not exceeding four miles an hour, and that, having decided not to stop entirely, but to make the attempt to pass the Morse on her starboard side, her engine was stopped and reversed as soon as it was safe or necessary to do so. To have gone at a much less speed would have endangered her steerage way and her fetching up on the bank, and to have stopped and reversed sooner would have tended to swing her bows against the Morse. The second charge of fault is, therefore, not sustained.

3. That the Scott did not stop and reverse her engine until a collision had become inevitable. As we have already seen, the Scott was rightfully in the channel. If the Morse, when she saw the Scott approaching, had, as I think she ought to have done, desisted from her effort to get off until the Scott had passed, the accident would have been avoided. But she continued her efforts, and by doing so, threw herself athwart the channel and across the bows of the Scott, and that was the primary cause of the collision. Notwithstanding that, however, it was the duty of the Scott to avoid her if she could. Libellants' advocate contended that good seamanship required that the Scott should have stopped at once when she saw the Morse swing out across the channel. That it was within the power of the Scott to stop in time clearly appears by the proofs—the proofs showing that when the Scott saw the Morse swing out, the two vessels were from 500 to 600 feet distant from each other, and that the Scott, at the rate she was then running, could be stopped in about 200 feet. But it must be borne in mind that she was going with the current, and that the channel was too narrow to turn round with safety, and if she stopped, she was in danger of drifting upon the bank and getting aground herself. The master of the Scott, taking in the whole situation, and using his best judgment, as matters then and there appeared to him, thought that by checking and changing his course, he could safely pass the Morse on her starboard side, instead of on her port side, as he had intended, but which, on account of the manoeuvres of the Morse, had become impossible, and he acted accordingly. The result proved his judgment correct, so far as to his being able to get his vessel by the Morse, between her and the starboard channel bank; and it is evident that he would have gone entirely clear, if the bow of the Scott had not brought up on the bank before she had entirely passed the Morse, causing her stern to swing round against the Morse, and doing the damage complained of. It may be that if the Scott had stopped, instead of making the attempt to pass after the Morse had changed her position, any accident to either vessel would have been avoided. But that is merely conjectural and speculative, and it must be borne in mind that the emergency was brought about by the Morse herself; that the master of the Scott had but a few moments in which to deliberate; that he had the circumstances and situation all before him, and in view of them decided upon his course—a decision which the result showed was at least not an unreasonable one—and the accident happened, as we have seen. Under all these circumstances, it would not be reasonable or just to charge the Scott with fault for doing as she did instead of stopping, even if the probabilities were stronger than they are that by stopping the accident would have been avoided. The third charge of fault is therefore not sustained. Libel dismissed, with costs to the respondent.